Caroline WALLACE, et al.

v.

Pascal F. CALOGERO Jr., et al.

No. Civ.A. 03–1245.

United States District Court,
E.D. Louisiana.

Sept. 17, 2003.

**14.** *See supra* note 9.

Vincent James Booth, Booth & Booth, New Orleans, LA, S. William Livingston, Kevin S. Newsom, Covington & Burling, Washington, DC, for Caroline Wallace, Emily Maw.

Harry Rosenberg, Bruce Victor Schewe, Christopher K. Ralston, Phelps Dunbar, LLP, New Orleans, LA, for Pascal F. Calogero, Jr., Jeffrey P. Victory, Jeannette Theriot Knoll, Chet D. Traylor, Catherine D. Kimball, John L. Weimer, Bernette J. Johnson, Daniel E. Webb, Harry J. Philips, Jr.

## ORDER AND REASONS

FALLON, District Judge.

Plaintiffs are nonimmigrant[1] aliens lawfully residing[2] in New Orleans, Louisiana who claim they have been denied membership in the Louisiana Bar Association because of their status. They have brought this suit against the members of the Louisiana Supreme Court in their official capacity and the Chairman and Vice–Chairman of the Louisiana Committee on Bar Admissions in their official capacity under 42 U.S.C. § 1983, challenging Louisiana Supreme Court Rule XVII, Section 3(B), which restricts bar membership to citizens and immigrant aliens. Plaintiffs seek declaratory and injunctive relief, as well as attorney's fees and costs.

Before the Court are the following motions: (1) Defendant's motion to dismiss (Rec.Doc. No. 15); and (2) Plaintiff's motion for summary judgment (Rec.Doc. No. 12).

### I. Factual and Procedural Background

Louisiana Supreme Court Rule XVII, Section 3(B) requires every applicant for admission to the Louisiana Bar to be a citizen or resident alien of the United States.[3] Prior to 2002, the Louisiana Supreme Court interpreted the phrase "resident alien" contained in the Rule to mean an alien lawfully residing in the United States, including both immigrant and nonimmigrant aliens.[4] In 2002, the Louisiana

---

**1.** An alien is defined under the Immigration and Nationality Act as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3) (1999). A nonimmigrant alien is an alien who is granted temporary residence in the United States for specific purposes as outlined in the Immigration and Nationality Act. *See id.* § 1101(a)(15) (outlining classes of aliens eligible for temporary residence in the United States). An immigrant alien is an alien who is granted permanent residence in the United States. *See id.* (providing that all aliens are immigrant aliens unless they were granted admission to the United States as a nonimmigrant alien).

Plaintiffs and Defendants use different terms to refer to the immigration status of the Plaintiffs, such as temporary resident alien and non-resident alien. For the sake of precision, when discussing immigration status, this Court uses the statutory language, immigrant and nonimmigrant. When discussing issues related to residency, this Court uses permanent resident alien and nonpermanent resident alien.

**2.** Under the Immigration and Nationality Act, the term "residence" means "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33).

**3.** The Rule provides in pertinent part, "Every applicant for admission to the Bar of this state shall meet all of the following requirements ... (B) Be a citizen of the United States or a resident alien thereof...." La. S.Ct. R. XVII, § 3(B).

**4.** *See In re Respondek*, 442 So.2d 435, 435 (La.1983) (holding that the phrase "resident alien" means an alien lawfully residing in the United States) *overruled by In re Bourke*, 819

Supreme Court overruled its prior rulings and held that the term "resident alien" applies only to immigrant aliens: that is, aliens permanently residing in the United States pursuant to immigrant visas. *In re Bourke,* 819 So.2d 1020, 1022 (La.2002).

Plaintiffs are citizens of the United Kingdom currently residing in the United States under nonimmigrant visas. Such nonimmigrant visas permit aliens to reside in the United States and provide a date certain on which they must leave the United States. 8 U.S.C. § 1101(26). Plaintiff Wallace received a diploma in legal practice with distinction from the College of Law in London in 1998. She is licensed to practice law in England and Wales and was admitted to the roll of solicitors in September, 2001. Plaintiff Wallace qualified to work as a paralegal at the Capital Post Conviction Project of Louisiana under an H–1B work visa.[5] Her visa expires in October, 2004, and she plans to apply for a three-year extension. She submitted an application to the Louisiana Committee on Bar Admissions ("the Committee") for an equivalency determination[6] in December 2001 and was told in November 2002 that her application was accepted. She was later told, however, that she was ineligible to take the Louisiana Bar Examination because she is not a permanent resident alien or a citizen of the United States.

Plaintiff Maw attended Tulane University School of Law under an F–1 student visa.[7] She graduated with a *juris doctor* degree in May 2003. Her student visa included an Optional Practical Training authorization that expires in March, 2004, and she plans to apply for an H–1B work visa. It is not clear from the record whether Plaintiff Maw applied to take the Louisiana Bar Examination. In her affidavit, she states that she applied for admission to the Louisiana State Bar in 2001 based on reciprocity.[8] (Maw Aff. ¶ 6).

So.2d 1020, 1022 (La.2002); *In re Appert,* 444 So.2d 1208, 1209 (La.1984) (stating that the Bar Committee is directed to consider foreign nationals lawfully residing in the United States as resident aliens) *overruled by In re Bourke,* 819 So.2d at 1022.

5. An H–1B class alien is an alien "who is coming temporarily to the United States to perform services … in a speciality occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). To obtain an H–1B work visa, a U.S. employer must file an I–129 petition with the U.S.A. Immigration Services. If approved, the potential alien employee must show that the purpose of his trip is to enter the United States for business; that he plans to remain for a specific limited period; and that he has a residence outside of the U.S. as well as other binding ties which will insure his return abroad at the end of his visit. If issued, an H–1B visa expires at a date certain, up to three years from the date of issuance. The worker may apply for an extension of up to three years, with the total stay limited to six years maximum. *See http://www.usais.org/businesspleasurevisitors.htm* (providing information on nonimmigrant business and pleasure visas).

6. Graduates of foreign law schools who seek admission to the Louisiana Bar must file an application for an equivalency determination to establish that the applicant's legal education is equivalent to that of a U.S. law school accredited by the American Bar Association. La. S.Ct. R. XVII, § 6.

7. An F–1 class alien is an alien "having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study…." 8 U.S.C. § 1101(a)(15)(F)(I). The U.S.A. Immigration Services issues visas to students attending U.S. schools in two nonimmigrant categories: F visas are issued to students pursuing academic studies, and M visas are issued to students pursuing nonacademic or vocational studies. *See http://www.usais.org/studentvisas.htm* (providing information on student visas).

8. La. S.Ct. R. XVII, § 11 provides the procedure for applying for admission to the bar based on reciprocity.

The Complaint states that she applied to take the Louisiana Bar Examination. (Compl.¶ 19). In either case, she was told that she was ineligible for admission to the bar because she is not a permanent resident alien or citizen of the United States. Neither Plaintiff petitioned the Louisiana Supreme Court for a review of the Committee's denial of their respective applications.[9]

On May 2, 2003, Plaintiffs filed their original complaint seeking declaratory and injunctive relief as well as costs and attorney's fees. (Rec.Doc. No. 1). Plaintiffs named as defendants all seven Louisiana Supreme Court Justices–Pascal F. Calogero, Jr., Jeffrey P. Victory, Jeannette Theriot Knoll, Chet D. Traylor, Catherine D. Kimball, John L. Weimer, and Bernette J. Johnson-and the Chairman and Vice-Chairman of the Louisiana Committee on Bar Admissions–Daniel E. Webb and Harry J. Philips, Jr., respectively (collectively "Defendants"). All the Defendants were sued in their official capacities only.

Plaintiffs initially moved to have their case transferred to Judge Jay C. Zainey and consolidated with *Leclerc v. Webb*, 270 F.Supp.2d 779 (E.D.La.2003), which was then before him, arguing that the cases were factually and legally similar. (Rec. Doc. No. 2). After closely considering the matter, Judge Zainey denied Plaintiffs' motion, noting that none of the *Leclerc* plaintiffs graduated from an American Bar Association accredited law school like Plaintiff Maw in the instant matter. (Rec. Doc. No. 6). Based on this fact, Judge Zainey concluded that the respective plaintiffs were not similarly situated. Thus, the case remains with this Court.

Plaintiffs then filed a motion for summary judgment and Defendants filed a motion to dismiss on June 23, 2003, which were both heard with oral argument on August 20, 2003.

In their motion for summary judgment, Plaintiffs pray for a judgment:

1. Declaring that Rule XVII Section 3(B) of the Rules of the Louisiana Supreme Court violates the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Supremacy Clause of Article VI of the United States Constitution and is unenforceable to the extent that it bars nonpermanent resident aliens from sitting for the Louisiana Bar Examination and from becoming members of the Louisiana State Bar;

2. Declaring that Defendants may not deny nonpermanent resident aliens, because of their nonpermanent alien status, the opportunity to sit for the Louisiana State Bar Examination and to be admitted to the Louisiana State Bar;

3. Awarding Plaintiffs their costs and attorney's fees as authorized by 42 U.S.C. § 1988 and granting such other and further relief as this Court deems just and proper.

Defendants assert that Plaintiffs fail to present a justiciable case or controversy because their claims are not ripe for adjudication and because Plaintiffs lack standing. Further, Defendants argue that Plaintiffs' claims are barred by the Eleventh Amendment and the doctrines of judicial and legislative immunity. Defendants additionally urge this Court to abstain from this matter. Finally, Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted. The Court considers each argument in turn.

---

9. La. S.Ct. R. XVII, § 9 provides the procedure for appealing the Committee's denial of eligibility for admission to the bar.

## II.  Defendants Motion to Dismiss

### A.  Legal Standards

A party may seek dismissal of a complaint based on lack of jurisdiction. Fed. R.Civ.P. 12(b)(1). Jurisdictional defects that warrant dismissal include immunity of the defendants in an action and the court's consequent lack of subject matter jurisdiction. *Bank One Texas v. United States,* 157 F.3d 397, 403 n. 12 (5th Cir.1998). A party may also seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a district court should construe the complaint liberally in favor of the plaintiff, assuming all factual allegations to be true. *Leleux v. United States,* 178 F.3d 750, 754 (5th Cir. 1999). Rule 12(b)(6) motions are viewed with disfavor and are rarely granted. *Id.* A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997)).

### B.  Justiciable Claim or Controversy

Defendants claim that Plaintiffs fail to present an actual case or controversy as required by Article III, Section 2 of the United States Constitution. To interpret the requirements of Article III, the courts have developed a series of principles termed "justiciability doctrines." *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir.2000). These principles include the doctrines of ripeness and standing which the Defendants claim are lacking in this case. *Id.*

#### 1.  Ripeness

██ The ripeness doctrine "separates those cases that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp.,* 205 F.3d at 857. Although Plaintiffs seek declaratory relief which may typically be sought before an injury-in-fact has occurred, *Id. (citing Pic–A–State Pa., Inc. v. Reno,* 76 F.3d 1294, 1298 (3d Cir.1996)), they must still present an actual controversy for resolution. *Id. (citing Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). A case will be dismissed for lack of ripeness when the case presents hypothetical or abstract issues. *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586–87 (5th Cir.1987). To determine ripeness, courts consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id.* Generally, a case is ripe if the only remaining issues are legal ones and no further factual development is necessary. *Id.*

██ Defendants argue that Plaintiffs fail to present an actual case or controversy as required under Article III, Section 2 of the Constitution. Defendants claim that the matter is not ripe for adjudication. Defendants contend that Plaintiffs must submit an application to take the bar examination, be denied based solely on residency status, and exhaust available administrative review procedures before the matter would become ripe. As these steps have not all occurred, according to the Defendants, factual questions remain to be answered, and the Plaintiffs have not suffered actual harm.

Plaintiffs argue that the issues in the case are purely legal and, thus, fit for judicial determination. They argue that the Rule as interpreted by the Louisiana Supreme Court completely prohibits non-immigrant aliens from becoming members

of the bar.[10]  Both Plaintiffs have been told by the Committee that their applications to take the bar examination will be denied because they are nonimmigrant aliens.  Therefore, Plaintiffs allege that no further factual development is required and that the issues presented to the Court are purely legal.  Additionally, the Plaintiffs claim that they want to become members of the Louisiana Bar, intend to do so if permitted, and are suffering actual, not speculative, hardship because they cannot proceed with their bar applications.

On facts very similar to this case, Judge Zainey, in a thorough and well-crafted opinion, recently found that the *Leclerc* plaintiffs presented claims that were ripe for judicial determination.  *Leclerc,* at 788.  The same reasoning applies in this case.  Plaintiff Wallace submitted an application for an equivalency determination (the first step in applying to the take the bar examination) and was told by the Committee that she was ineligible to take the examination because she is a nonpermanent resident alien.  Plaintiff Maw submitted either an application for admission to the bar based on reciprocity or an application to take the bar examination and was similarly told that she was ineligible because she is a nonpermanent resident alien.  Thus, as in *Leclerc,* the Committee enforced the prohibition contained in the Rule against the Plaintiffs.  There is no reason to believe that the Louisiana Supreme Court would have accepted the Plaintiffs' applications to take the bar examination.  To do so, it would have to contravene its own interpretation of "resident alien" in *Bourke.*  Therefore, the only remaining issues in the case are legal and an actual controversy exists between the parties.

Accordingly, Plaintiffs' claims are ripe for adjudication.

2.  Standing

The "constitutional minimum of standing" requires three elements: (1) "injury in facta harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causationa fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "redressability—a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  A plaintiff generally may not seek redress for injuries done to others, but must submit to the challenged policy.  *Ellison v. Connor,* 153 F.3d 247, 254–55 (5th Cir.1998) (*quoting Jackson–Bey v. Hanslmaier,* 115 F.3d 1091, 1096 (2d Cir.1997)).  The Fifth Circuit, however, excuses this threshold requirement for standing where the plaintiff shows that submission to the policy would have been futile.  *Id.* (*citing Jackson–Bey,* 115 F.3d at 1096).

Defendants argue that the Plaintiffs lack standing to bring the suit because they seek redress for a purported injury that has not occurred and that may never occur.  The Plaintiffs argue that the Rule is an absolute prohibition and that there is no doubt that any further effort to gain admission to the bar will be futile due to their nonimmigrant status.  Plaintiffs further claim that the prohibition is causing them present, concrete injury by not allowing them to become members of the bar.

**10.**  *See In re Bourke,* 819 So.2d at 1022 (establishing that the term "resident alien" in rule XVII applies only to permanent resident aliens and overruling inconsistent prior holdings); *Leclerc,* at 797, 801 (finding that the Louisiana Supreme Court did not violate the Fourteenth Amendment rights of the plaintiffs by prohibiting nonpermanent resident aliens from being admitted to the Louisiana State Bar).

■ Again applying and agreeing with the court's opinion in *Leclerc*, this Court finds that the Plaintiffs have standing to bring the suit. Plaintiffs have been told that they are ineligible to take the bar examination. They have no reason to believe that their respective applications to take the bar examination would be accepted. On the contrary, the Committee would, without a doubt, reject their applications due to their nonimmigrant status. Thus, the Plaintiffs' injury is concrete, and they have standing.

In sum, Defendant's motion to dismiss based on Plaintiff's failure to establish a justiciable case or controversy is hereby DENIED.

### C. Abstention

■ Defendants argue that this Court should abstain from hearing the matter pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[11] Defendants claim that an adequate state court review is available and that the state law issues are a matter of substantial public interest. Specifically, the public has an interest in how the Louisiana Supreme Court regulates lawyers and the practice of law. As the Louisiana Supreme Court has particular knowledge, expertise, and familiarities with the policies at issue, Defendants urge the Court to abstain from hearing the matter.

Plaintiffs argue that abstention is not warranted because the case does not pres-

ent any disputed or difficult questions of state law. According to Plaintiffs, the rule is clear, and they are asking the Court to determine if the Rule violates the Constitution.

As in *Leclerc*, the Court is not persuaded that Plaintiffs present questions of difficult state law such that abstention is warranted. While the suit involves questions of substantial public interest, the claims are based solely on federal law.

Accordingly, the Court declines to exercise its discretion to abstain from this matter.

### D. Eleventh Amendment Immunity

■ Defendants allege that all of the Plaintiffs' claims, excluding their equal protection claims,[12] are barred by the Eleventh Amendment.[13] Defendants allege that the Plaintiffs sued the Justices and Bar Admissions Officials in their official capacities thereby making the state a party in interest. Plaintiffs argue that their claims fit squarely within the *Ex Parte Young*[14] exception to Eleventh Amendment immunity because they seek prospective declaratory and injunctive relief against state officials alleged to be acting in violation of the Constitution.

The Court agrees with Plaintiffs and finds that the *Ex Parte Young* exception is applicable in this case, and, thus, Defendants are not entitled to immunity under the Eleventh Amendment. Accordingly,

---

**11.** The *Burford* doctrine provides that a federal court should not exercise its jurisdiction when the case raises difficult questions of state law. *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

**12.** Defendants acknowledge that the Eleventh Amendment does not bar the Plaintiff's equal protection claims.

**13.** The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit inlaw or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

**14.** 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Ex Parte Young* doctrine allows declaratory or prospective injunctive relief against state officials acting in violation of federal law. *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir.2001).

the Defendants' motion to dismiss based on Eleventh Amendment immunity is DENIED.

### E. Absolute Immunity

■ Defendants assert that they are absolutely immune from the instant suit based on the doctrines of judicial and legislative immunity. The Court will address the applicability of each doctrine in turn.

#### 1. Judicial Immunity

Defendants claim that they are absolutely immune from suit pursuant to the doctrine of judicial immunity.[15] Judicial immunity applies, according to Defendants, because actions taken in regulating lawyers and the practice of law are judicial in nature.[16]

Plaintiffs argue that judicial immunity does not apply. Specifically, Plaintiffs note that the Supreme Court has found that the administration of bar matters requires judges to act in three capacities: executive, legislative, and judicial. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).[17] According to Plaintiffs, the Defendants are acting in their executive capacity because they are implementing and enforcing the Rule thereby disqualifying them from judicial immunity.

As in *Leclerc*, the Court finds that Defendants act in their executive capacity when they enforce bar rules. Both the general doctrine of judicial immunity and the Federal Courts Improvement Act of 1996 apply to actions taken by judicial officers in their judicial capacity. Thus, the FCIA is inapplicable here and the doctrine of judicial immunity does not bar the Plaintiffs' suit.

Accordingly, Defendants motion to dismiss based on judicial immunity is DENIED.

#### 2. Legislative Immunity

Defendants also claim that they are entitled to absolute legislative immunity. Similar to judicial immunity, officials enjoy absolute immunity from suit for actions taken in their legislative capacity.[18] Defendants claim that legislative immunity

---

**15.** *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (finding that public officials like judges and prosecutors are absolutely immune from claims based on actions taken in their official capacities); *Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (finding judicial immunity to be "a general principle of the highest importance to the proper administration of justice").

Defendants claim that judicial immunity has been enlarged pursuant to the Federal Courts Improvement Act of 1996. Defendants note particularly that the FCIA amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

**16.** Defendants argue that the doctrine applies to the Justices because, in promulgating rules for lawyers, they are acting in their judicial capacity. Moreover, Defendants claim that the doctrine applies to the Bar Admissions officials because the immunity bars suits against officials acting in quasi-judicial roles. *Samuel v. Michaud*, 980 F.Supp. 1381, 1415–16 (D.Idaho 1996) ("State bar association committee members policing the legal profession are entitled to absolute quasi-judicial immunity for their actions.").

**17.** First, judges act in a judicial capacity when determining the fitness of individual applicants. Second, judges act in a legislative capacity when promulgating bar rules. Third, judges act in an executive capacity when enforcing those rules. *Consumers Union*, 446 U.S. at 734, 100 S.Ct. 1967.

**18.** *See Consumers Union*, 446 U.S. at 730–34, 100 S.Ct. 1967 (finding that Justices of a state supreme court are protected by legislative immunity from claims against them for their role in promulgating the rules governing the practice of law).

applies because the Plaintiffs ask them to modify the current rule and create a different bar admission rule.[19]

Plaintiffs re-assert that they are suing Defendants in their executive capacity as enforcers of bar admission rules.

Plaintiffs are making a facial challenge to the constitutionality of the Rule. They seek to enjoin the Defendants from enforcing the Rule. As such, the Plaintiffs' claims are not aimed at the authority of the Defendants to *promulgate* rules pursuant to their legislative capacity, but, rather, at their authority to *enforce* the rules pursuant to their executive capacity. Thus, legislative immunity is inapplicable, and the Defendants motion to dismiss based on legislative immunity is DENIED.

### III. Plaintiff's Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment on their claims for declaratory relief as a matter of law. They claim that there are no genuine issues of material fact in this case because they are attacking the facial unconstitutionality of the Rule and its blanket preclusion of all nonimmigrant aliens from admission to the bar. Thus, Plaintiffs claim that there is no reasonable basis for disputing the material facts as to the nature and application of the Rule.[20]

#### A. Legal Standards

In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Littlefield v. Forney Indep. School Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.2001)). Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ.P. 56. If the moving party fails to meet its initial burden of demonstrating the absence of a genuine issue of material fact, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.* 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, if the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir.1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. Constitutional Claims

■ The Louisiana Supreme Court has plenary power to define and regulate all aspects of the practice of law, including admission of attorneys to the bar. *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 43 (5th Cir.1992). States may properly exercise this power by imposing high standards

---

19. *See Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 497 (5th Cir.1986) (finding that the Louisiana Supreme Court "occupies the same position as that of the [Louisiana] legislature" when exercising its rule-making authority over bar matters).

20. Defendants did not file a cross motion for summary judgment, but, rather, a motion to dismiss. Thus, Defendant's arguments in opposition are taken from their motion to dismiss. (Rec.Doc. No. 15).

of qualification before they admit an applicant to the bar. *Schware v. Board of Bar Examiners of State of New Mexico,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). However, a state supreme court may not exercise this power in a manner that contravenes the Due Process or Equal Protection clauses of the Fourteenth Amendment. *Id.* Thus, any qualification for admission to the bar must bear a rational relationship to the fitness and capacity of the applicant to practice law. *Id.*

### 1. Federal Preemption Claim

■ Plaintiffs argue that Congress has established a comprehensive statutory scheme to govern the treatment of aliens in the United States and that the Rule is thereby preempted by federal immigration law. They note that state law is preempted by federal law not only when there is a direct conflict between the two laws, but also when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The Supremacy Clause prevents states from enacting regulations that discriminate against lawfully admitted aliens by placing burdens on them not permitted by Congress.[21] Plaintiffs allege that Defendants are placing an additional burden on their rights that is in conflict with federal immigration law. Specifically, Plaintiffs argue that Congress regulates the employment opportunities of nonimmigrant aliens.[22] Federal law allows a state to have licensing requirements to practice certain professions, but contains no provision permitting the states to bar an alien's opportunity to practice his profession.

Thus, Plaintiffs contend that it is within Congress's power to determine whether nonimmigrant aliens should be allowed to practice law.

Defendants state that the Rule is not in actual conflict with federal immigration law. Additionally, they note that a state provision enacted to protect the public health and safety should be upheld unless there is evidence of Congress's clear and manifest purpose of displacing the state's exercise of its police power. *New York State Soc. of Orthopaedic Surgeons, Inc., v. Gould* 796 F.Supp. 67, 72 (E.D.N.Y. 1992). Defendants contend that Plaintiffs fail to identify any federal statute that is in conflict with the Rule.

This Court finds that the Rule is not preempted by federal law. In *Leclerc,* the court correctly found that the Rule does not intrude on Congress's power to control immigration and admittance into the United States. *Leclerc,* at 802. This Court finds that the reasoning applied in *Leclerc* applies to the instant case as well.

Accordingly, Plaintiffs' motion for summary judgment on the issue of federal preemption is hereby DENIED.

### 2. Equal Protection Claim

■ Plaintiffs contend that the Rule unconstitutionally discriminates between citizens and immigrant aliens on the one hand, and nonimmigrant aliens on the other. According to Plaintiffs, there is no meaningful distinction between immigrant and nonimmigrant aliens who are lawfully residing in the United States vis-à-vis their respective abilities to practice law. Thus, Plaintiffs argue, the exclusion of one class of resident aliens is arbitrary and has

---

**21.** *See, Takahashi v. Fish and Game Commission,* 334 U.S. 410, 416, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948) (striking down state law prohibiting a certain class of aliens from obtaining a commercial fishing license).

**22.** *See* 8 U.S.C. § 1101(a)(15) (describing various employment related and other classifications under which aliens may be lawfully admitted into the United States on a non-permanent basis).

nothing to do with the fitness and capacity of such aliens to practice law.

As the classification is based on alienage, Plaintiffs claim that the proper level of scrutiny for the Court to apply in its analysis of the Rule is strict scrutiny.[23] Plaintiffs urge the Court to follow *In re Griffiths*, 413 U.S. 717, 722, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), wherein the Supreme Court applied strict scrutiny to a Connecticut bar admissions rule permitting only United States citizens admission to the bar. The *Griffiths* Court implied that the legal distinction between "resident aliens" and citizens was largely semantic and in no way justified a wholesale ban on the admission of noncitizen, resident aliens to the bar. Though the *Griffiths* Plaintiff was an immigrant alien,[24] Plaintiffs in this case, nonimmigrant aliens, argue that Griffiths is controlling because the Court did not suggest that the holding applied only to immigrant aliens. Though Plaintiffs urge the Court to apply strict scrutiny, they argue alternatively that the Rule can not even withstand scrutiny under the rational basis standard.

Defendants argue that Plaintiffs fail to state a cognizable constitutional claim because there is no fundamental right for a non-lawyer to practice law.[25] As such, Defendants claim that the Louisiana Supreme Court is properly acting pursuant to its plenary power to regulate the practice of law by excluding persons with nonimmigrant visas from admission to the bar.

Though based on alienage, the Defendants allege that the Rule should not be analyzed under strict scrutiny because the Supreme Court has never held that nonimmigrant resident aliens are a suspect class. Rather, the Defendants urge the Court to analyze the Rule under the rational basis standard. Defendants claim that there is a meaningful difference between citizens and immigrant aliens on the one hand and nonimmigrant aliens on the other. This meaningful difference, according to Defendants, is the temporary nature of Plaintiffs' residence in the United States. Thus, the Defendants ask this Court to distinguish the instant matter from the facts in *Griffiths* based on the different type of immigration status of the respective Plaintiffs. Defendants argue that the state's decision not to admit nonimmigrant aliens to the bar is a valid and legitimate exercise of the state's public safety and police powers when analyzed under the rational basis standard.

One need not dig deeply to discover the important contributions immigrants have made to our nation. Indeed, Louisiana, in no small part, owes its unique legal history to the influence and contribution of foreign legal systems and attorneys. Louisiana was claimed in the name of King Louis XIV of France in 1682 and remained under French rule until the territory was ceded to Spain in the Treaty of Fontainebleau in 1762.[26] Thereafter, Louisiana became a

---

**23.** The Supreme Court has held that classifications based on alienage are inherently suspect and subject to strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 372–73, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

**24.** The Plaintiff in *Griffiths* was a citizen of the Netherlands and originally came to the United States in 1965 as a visitor. *Griffiths*, 413 U.S. at 718, 93 S.Ct. 2851. She thereafter married a United States citizen, thereby qualifying for permanent residence. *Id.* Though she was eligible for naturalization,

she chose not to renounce her Dutch citizenship. *Id.*

**25.** Though Defendants state this proposition correctly, the Court notes that once a state establishes a bar and a bar examination, it must permit admission in a manner consistent with the Fourteenth Amendment.

**26.** Alain A. Levasseur, *The Major Periods of Louisiana Legal History*, 41 Loy. L.Rev. 585, 585, 587 (1996).

"Spanish ultramarine province," subject to the same laws as other Spanish possessions.[27] Pursuant to the Treaty of Ildefonso, Louisiana was returned to France in 1800 only to be sold to the United States in what became known as the Louisiana Purchase of 1803.[28] Thus, Louisiana law has its roots in foreign legal systems and codes such as las Sietes Partidas of Spain and the Napoleonic Code of France.

Additionally, many foreign jurists contributed to the drafting and development of Louisiana's early legal system. For example, the Spanish Governor of Louisiana, Don Alexander O'Reilly, issued the Ordinance and Instructions of November 25, 1769, instituting the rule of Spanish law in the territory and influencing substantially the development of the Louisiana Procedural system.[29] Louis Moreau–Lislet, a French émigré, was one of the redactors of the Louisiana Digest of 1808 as well as the Louisiana Civil Code of 1825.[30] Judah P. Benjamin, born in the British West Indies in 1811, was one of the four founders of Tulane University School of Law and a United States Senator from Louisiana.[31] In addition to contributing to the formation and development of Louisiana's legal system, Louisiana jurists and scholars continue to rely on foreign sources, such as Aubry and Rau and Planiol, to interpret, particularly, the civilian aspects of our law. Thus, this Court is conscious of and sensitive to the historical and continuing debt Louisiana owes to foreign legal systems and members of foreign bars.

■ Though America is a nation of immigrants, our history is replete with discriminatory acts and policies against aliens. "Whether it is founded on economic protectionism, xenophobia, or other motivations, aliens frequently have been denied benefits and privileges accorded to citizens."[32] Despite the significant contribution immigrants have made and continue to make to our society, immigrants still experience prejudice and discrimination in the United States. The Supreme Court first addressed this discrimination in *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), wherein the Court found that aliens are "persons" guaranteed equal protection of the laws under the Fourteenth Amendment.[33] In 1971, the Supreme Court found that state classifications based on alienage are inherently suspect and subject to strict scrutiny review. *Graham*, 403 U.S. at 371, 91 S.Ct. 1848. The Court so found because aliens "as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Id.* (*citing U.S. v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)). Aliens cannot vote and thus cannot protect themselves through the normal democratic process.[34] Therefore, laws that create classifications based on alienage are presumptively inval-

27. Raphael J. Rabalais, *The Influence of Spanish Laws and Treaties on the Jurisprudence of Louisiana: 1762–1828*, 42 La. L.Rev. 1485, 1487 (1982).

28. Levasseur, *supra* note 25, at 593, 610–11.

29. A.N. Yiannopoulos, *The Civil Codes of Louisiana, in* La. Civ.Code Ann. XXXVI (West 2003).

30. *Id.* at XXXVIII–XLIII.

31. Suman Naresh, *Judah Philip Benjamin at the English Bar*, 70 Tul. L.Rev. 2487, 2487 (1996).

32. Erwin Chermerinsky, Constitutional Law: Principles and Policies 614 (Aspen Law & Business 1997).

33. Indeed, the Court has recognized that even undocumented or illegal aliens are "persons" under the Fourteenth Amendment. *See Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

34. *See* Gerald M. Rosberg, The Protection of Aliens from Discriminatory Treatment by the National Government, 1977 Sup.Ct. Rev. 275, 308–09 (arguing that classifications based on alienage should receive strict scrutiny due to the political powerlessness of aliens).

*id,* and the classification will be found to be constitutional only if the state can demonstrate that the law is the least restrictive means to achieve a compelling state interest. *In re Griffiths,* 413 U.S. at 721–22, 93 S.Ct. 2851. Laws subject to strict scrutiny review rarely survive attack. *Bernal v. Fainter,* 467 U.S. 216, 220 n. 6, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984).

Although strict scrutiny review is the general rule when states create classifications based on alienage, the Supreme Court has created two important exceptions.[35] First, the Supreme Court recognizes a self-government exception that applies when a state creates a law excluding aliens from participation in its democratic political institutions. *Foley v. Connelie,* 435 U.S. 291, 295–96, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978). Only rational basis review is used under this exception. Thus, the Supreme Court has upheld state laws that deny aliens the right to vote and the opportunities to run for elective office, to sit on a jury, and to participate in other nonelective positions that contribute to the formulation, execution, or review of public policy. *Id. (internal citations omitted).* The Supreme Court declined to apply this exception to notaries public, however, explaining that the exception is narrow and addresses only those who "participate directly in the formulation, execution, or review of broad public policy, and hence perform functions that go to the heart of representative government." *Bernal,* 467 U.S. at 222, 104 S.Ct. 2312.

Second, the Supreme Court has recognized an exception to the application of strict scrutiny in one case concerning undocumented or illegal aliens. In *Plyler,* the Supreme Court declared unconstitutional a Texas Law that provided free public education for children of citizens and lawfully admitted aliens, but required undocumented aliens to pay for schooling for their children. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). The Court held that strict scrutiny was inapplicable because illegal aliens cannot be treated as a suspect class. *Id.* at 223, 102 S.Ct. 2382. However, the Court applied more than rational basis review, emphasizing the innocence of the children involved and the importance that such children receive an education. *Id.* at 241, 102 S.Ct. 2382.

Defendants argue that this Court should recognize another exception to the general rule that strict scrutiny applies to state classifications based on alienage. Namely, Defendants contend that nonpermanent resident aliens, that is to say nonimmigrant aliens, are not a suspect class because the Supreme Court has never expressly stated that they are.[36] Defendants base their argument on the fact that the cases applying strict scrutiny to alienage classifications involve immigrant aliens. Thus, the first issue this Court must face is the appropriate level of scrutiny to apply to the Rule.

---

**35.** The Court also recognizes a third exception when the discrimination is a result of federal law. Congress has plenary power to regulate immigration and requires judicial deference under the separation of powers doctrine. In such cases, the Court applies rational basis review. *See Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (upholding federal law denying Medicaid benefits to aliens unless they have been admitted for permanent residence and resided for at least five years in the United States).

**36.** The Supreme Court has not spoken directly on the issue of the appropriate level of scrutiny to apply to nonimmigrant, resident aliens. Lower courts have held both ways. *See Leclerc,* at 799–800 (applying rational basis review); *Ahmed v. Univ. of Toledo,* 664 F.Supp. 282 (N.D.Ohio 1986) (applying rational basis review); *Tayyari v. New Mexico State Univ.,* 495 F.Supp. 1365 (D.N.M.1980) (applying strict scrutiny).

In *Griffiths*, the Court held that a Connecticut bar admissions rule that allowed only citizens to be admitted to the bar was unconstitutional. *In re Griffiths*, 413 U.S. at 722–23, 93 S.Ct. 2851. The Court held that the rule unconstitutionally discriminated against "resident aliens." *Id.* Defendants argue that since the Plaintiff in *Griffiths* was an *immigrant* alien, i.e., a permanent resident alien, that this Court should interpret the phrase "resident alien" used by the Supreme Court to mean only a *permanent* resident alien. This Court is not persuaded by Defendant's argument and finds that the Supreme Court did not limit its holding to immigrant aliens, that is to say, permanent resident aliens.

To understand the significance of the term "resident alien" used by the *Griffiths* Court, one must begin with the Immigration and Nationality Act ("the Act"). 8 U.S.C. § 1101, *et seq.* For immigration purposes, Congress created two broad categories of resident aliens: immigrant and nonimmigrant. Simply stated, immigrant aliens are aliens who are granted permanent residence in the United States. § 1101(a)(15). Nonimmigrant aliens are aliens who are granted temporary residence in the United States for a number of specific reasons including business, pleasure, and educational. § 1101(a)(15)(A-S). The Act defines "residence" to mean "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." § 1101(a)(33). Thus, Congress distinguished between residence and immigration status. That is, an alien who resides in the United States may be either an immigrant or nonimmigrant alien. Had

Congress intended that only immigrant aliens could have a residence in the United States, Congress would have so stated.

Though Griffiths was an immigrant alien, the *Griffiths* Court did not use the statutory term "immigrant" in its holding. In fact, the Court only briefly mentioned the Plaintiff's immigration status in its recitation of the facts and in a footnote. *In re Griffiths*, 413 U.S. at 718, n. 1, 93 S.Ct. 2851. Rather, the Court used the inclusive term "resident alien." Had the Court intended to rest its holding on the immigration status of the alien, the Court would have used the statutory language. If the Court wished to restrict its holding to immigrant aliens, i.e., permanent resident aliens, it could have used the term "immigrant alien." The Court did not. Rather, in the context of its Fourteenth Amendment analysis, the Court focused on residence, using the term "resident alien," which includes both immigrant and nonimmigrant aliens. The Court reasoned that resident aliens are a suspect class and subject to the protections afforded by strict scrutiny review. The Court justified its application of strict scrutiny by noting:

> Resident aliens, like citizens, pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society. It is appropriate that a State bear a heavy burden when it deprives them of employment opportunities.

*Id.* at 722, 93 S.Ct. 2851. Nothing in the Act or the Court's opinion suggests that "resident alien" is limited to an immigrant alien. On the contrary, the term "resident alien" is broader than the Act's immigration categories and includes both immigrant and nonimmigrant aliens lawfully residing in the United States.[37] Addition-

---

**37.** This Court acknowledges that its application of strict scrutiny in this case is in conflict with the level of scrutiny applied in *Leclerc*. In *Leclerc*, Judge Zainey applied rational basis

review because he found that the Supreme Court had not yet treated nonimmigrant aliens as a suspect class. 270 F.Supp.2d at 799, 800. In his opinion, Judge Zainey stated

ally, the justification for applying strict scrutiny to immigrant resident aliens applies as forcefully to nonimmigrant resident aliens. Like immigrant aliens, nonimmigrant aliens "pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society." *Id.* This Court finds that *Griffiths* is controlling and, thus, strict scrutiny is applicable. Nonimmigrant resident aliens as a class are a "prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Id.* (*citing Carolene Products,* 304 U.S. at 152–53 n. 4, 58 S.Ct. 778). Therefore, similar to *Griffiths,* the Defendants bear a heavy burden when they deprive nonimmigrant resident aliens the opportunity to be admitted to the Louisiana bar.

To satisfy strict scrutiny review in this case, Defendants must show that the Rule is the least restrictive means to meet a compelling state interest. Defendants argue that the Louisiana Supreme Court properly promulgated and enforced the Rule pursuant to its legitimate and appropriate interests in protecting the public and policing attorneys. Defendants argue that a sufficient state interest is served by excluding nonimmigrant aliens due to the temporary and transient nature of their residency in Louisiana. According to Defendants, Plaintiffs' temporary residence could potentially prejudice clients and the courts in Louisiana because they could leave the country before completion of a matter. The Court finds that the Rule is not calculated to achieve this purpose.

The Rule does not restrict membership to the bar to citizens and immigrant aliens who plan to reside permanently in Louisiana. Nonimmigrant aliens as a class are not necessarily more transient than other groups. Citizens and immigrant aliens may be admitted to the bar even if they have no intention of residing in Louisiana. Louisiana attorneys relocate to other states and maintain bar membership in states where they do not reside. Due to advances in technology, attorneys can provide services and representation to clients from virtually anywhere. Louisiana attorneys retire, die, and leave the practice for a myriad of reasons. If the Louisiana Supreme Court were concerned with transience, the Rule would be calculated to address that problem directly. However, the Rule only excludes a fraction of persons who may have temporary residence in the state. The fact that the Plaintiffs *must* leave on a date certain does not change the analysis. On the contrary, it might be an advantage. Plaintiffs will be able to plan in advance for their departure and make the necessary arrangements to protect the interests of their clients.

The Defendants have not provided a compelling reason for the absolute prohibition of nonimmigrant aliens from the bar. As such, this Court finds that the Rule as enforced by the Louisiana Supreme Court violates the Equal Protection Clause of the Fourteenth Amendment by arbitrarily discriminating against nonimmigrant aliens who lawfully reside in the United States.

All applicants to the bar, including nonimmigrant aliens, must meet rigorous standards for admission. Particularly, all applicants are screened to ensure that they meet the requirements of good moral character and fitness. The screening process provides adequate protection to the public against potentially unscrupulous and un-

---

that the Supreme Court declined the opportunity to do so in *Toll v. Moreno,* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982). The *Toll* majority, however, decided the case on preemption grounds and did not reach the equal protection question. Moreover, the facts surrounding the plaintiffs' immigration status in *Leclerc* were different from the present case.

qualified attorneys. Barring nonimmigrant aliens does not enhance this protection. On the contrary, such a bar could result in depriving the public of excellent legal representation.

Thus, Plaintiffs' motion for summary judgment declaring Louisiana Supreme Court Rule XVII, Section 3(B) in violation of the Equal Protection Clause of the Fourteenth Amendment is GRANTED, and the Rule is unenforceable to the extent that it bars these nonpermanent resident aliens from sitting for the Louisiana Bar Examination and from membership to the Louisiana Bar Association.[38]

▮ Plaintiffs claim that the Rule also violates the Due Process Clause of the Fourteenth Amendment. It is well established that courts should avoid addressing constitutional questions when possible, even those questions that are raised by the parties. *United States v. Lipscomb,* 299 F.3d 303, 359 (5th Cir.2002). As the Court resolves Plaintiffs' claims on equal protection grounds, the Court need not reach the Plaintiffs' due process challenge.

The Plaintiffs' motion for summary judgment on the due process issue is hereby DENIED AS MOOT.

Accordingly:

IT IS ORDERED that Defendants' Motion to Dismiss should be and is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED IN PART, GRANTED IN PART, AND DENIED AS MOOT IN PART as detailed in this Order and Reasons.

---

38. Plaintiffs have also asked for an injunction as well as for attorney's fees and costs. These matters should be dealt with in subsequent motions and may require an evidentiary hearing before the Court.